707 So.2d 500 (1998)
IMAGINE CONSTRUCTION, INC.
v.
CENTEX LANDIS CONSTRUCTION CO., INC., et al.
No. 97-CA-1653.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1998.
Jeffrey A. Jones, Roy M. D'Aquila, Kenner, for Plaintiff-Appellant.
Peter J. Butler, Peter J. Butler, Jr., Breazeale, Sachse & Wilson, New Orleans, for Defendants-Appellees.
Before KLEES and BYRNES, JJ., and GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
In this construction contract dispute involving the New Orleans land-based casino, Imagine Construction, Inc. ("Imagine"), a subcontractor, claims entitlement to payment by the general contractor for materials furnished and work performed on the casino. Suit was directed against the general contractor, Centex Landis Construction Company, Inc. ("Centex"), and several defendant insurance companies[1] as sureties for Centex. Harrah's Jazz Company ("Harrah's"), the owner of the construction project, was also named as a defendant. Harrah's is not a party to this appeal.
*501 According to the plaintiff subcontractor, the work having been completed and the requisites for payment by the general contractor having been met, plaintiff is entitled to payment. Defendant, on the other hand, claims that, under the payment provisions of the subcontract, Imagine is entitled to collect payment from Centex only after Centex has been paid by Harrah's, the owner. Consistent with this position, defendants filed an Exception of Prematurity which was maintained by the trial judge. Plaintiff's suit was dismissed. We affirm.
The sole and only issue in this case is whether, pursuant to the provisions of the subcontract, Imagine's (subcontractor's) claim for payment against Centex (general contractor) is premature because of the owner's non-payment to the general contractor.
In concise written Reasons for Judgment, the trial judge stated:
"The contract language controls. The obligation `has not yet come into existence because of the non-occurrence of a suspensive condition on which its creation depends.'"
Citing this Court's opinion in Pyburn v. Walle Corp., 454 So.2d 1128 (La.App. 4 Cir. 1984), the trial judge concluded that because the general contractor, Centex, "has not been paid by the owner," no payments are due Imagine.
Imagine appealing relies primarily on the Louisiana Supreme Court's holding in Southern States Masonry, Inc. v. Landis Construction Company, Inc., 507 So.2d 198 (La. 1987), consolidated with Strahan v. Landis Construction Co., Inc., 507 So.2d 198 (La. 1987), cases strikingly similar to the instant one.
Southern States involves claims by subcontractors against the general contractors for payment in connection with the Louisiana World's Fair construction. In Southern States, the subcontractors demanded payment from the contractors for the work that had been completed. Relying on the language in the contract, the general contractor, as in the instant case, filed an Exception of Prematurity. The Supreme Court in Southern States set aside the trial court judgment maintaining the exception of prematurity.
The pertinent language in the subcontract agreement between the contending parties in Southern States reads as follows:
".... Contractor shall pay to Subcontractor, upon receipt of payment from the owner, an amount equal to the value of Subcontractor's completed work, to the extent allowed and paid by Owner on account of Subcontractor's Work ...." (emphasis ours)

"Final payment. A final payment consisting of the unpaid balance of the Price shall be paid within forty-five (45) days after the last of the following to occur: (a) full completion of the Work by subcontractor, (b) final acceptance of the Work by the architect and Owner, [c] final payment by Owner to Contractor under the Contract." (emphasis ours)
The operative language in the other consolidated case, Strahan v. Landis Construction Co., Inc., reads as follows:
".... Contractor agrees that he will pay to the said Sub-Contractor ... ninety percent (90%) of the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor, to be paid on or about the 20th of the following month, except that final payment will be made by said Contractor to said Sub-Contractor immediately following final completion and acceptance of such materials and work by the Architect and final payment received by said Contractor,...." (Emphasis Ours)
In analyzing these provisions, the Supreme Court concluded the language in the cited cases "did not suspensively condition the contractors' obligation to make payment until the contractors were in fact paid by the owner." Southern States, 507 So.2d at 203. According to the Supreme Court, the relevant provisions constituted a term of payment dictating when the contractor's payment should occur.
The Supreme Court reasoned that pursuant to the payment provisions, it was reasonable to assume that the subcontractor, in the normal course of events, would be paid by *502 the contractor who would have been paid by the owner. Both payment provisions contemplated the eventual payment by the owner as being a reasonably certain event. While the actual payment did not come to pass due to the owner's insolvency, it was not reasonable to then infer from the contract language that the parties either agreed or contemplated that should the owner not pay the general contractor, then in that event the subcontractors would not be paid by the general contractor. Rather, a more reasoned view of the provision's purpose is that it simply created terms for payment which retarded the contractor's obligation, thus requiring the obligation to make payment be performed within a reasonable time.
According to the Supreme Court, it was not reasonable to infer from the language in the contracts that the parties either agreed or contemplated that should the owner not pay the general contractor, the subcontractors would not be paid by the general contractor. The relevant question in Southern States, according to the Supreme Court, was not "if" the subcontractors will be paid but "when" they will be paid.
Turning now to the provisions of the subcontract in the instant case, the pertinent provisions of the agreements state:
"... The Subcontractor shall submit ... a written requisition for payment showing the value of the Work, all previous payments; and all other charges for proportional material or service furnished ..., and for which payment has been received by Centex Landis from Owner...." (Emphasis Ours)
The contract in the instant case further provides:
"..., final payment shall be made within forty days after the completion of the Work ... and provided Centex Landis has received final payment from the owner...." (Emphasis Ours)
And the final pertinent language of the contract reads:
"Notwithstanding anything to the contrary..., Subcontractor shall not be entitled to receive any progress payment or final payment prior to Centex Landis' actual receipt of that payment from Owner. Subcontractor agrees that Centex Landis' actual receipt of full payment from Owner shall be a condition precedent to the bringing of any action by Subcontractor hereof against Centex Landis or its surety, if any, relating to Contractor's failure to make payment...." (Emphasis Ours)
The question posed is whether the language in the instant subcontract is distinguishable from the contract provisions in the Southern States case, as contended by Centex; or, whether the language in our case is simply a distinction without a difference, as claimed by Imagine.
It appears that the pertinent language in the instant case more specifically and explicitly sets forth language which particularizes that payment is to be made to the subcontractor only if actual payment is made to the contractor by the owner. The most significant language in this respect in our case is the provision which states that the subcontractor agrees that full payment from the owner shall be a condition precedent to the bringing of any action by a subcontractor against the defendants.
This language specifically recognizes and acknowledges the possibility that there may be an utter and complete failure of either progress payments or full payments. Thus, in our case the failure to make payment by the owner was, in our view, reasonably foreseen and certainly intended to be addressed by the language of the payment provision. Until actual receipt of payment, any action against the contractor, Centex, would be premature.
Based on the holding of the Supreme Court in Southern States, when considered with the language of the contract in the instant case, we are in agreement with the trial court that plaintiff's action is premature. It seems clear from the language in the instant case that the intent of the parties was that payment would not be made to the subcontractor if payment had not been received by the general contractor from the owner.
Argument has been raised in our case by plaintiff that were we to conclude that the *503 instant action is premature, plaintiff might very well be faced with a defense of peremption at a later time to be raised by the surety or sureties. Both plaintiff and defendants argue the possibility or probability of this issue being raised at a later time and whether that defense would be viable.
This issue is not before us at this time. We are concerned here only with the question of whether plaintiff's suit was prematurely filed. The question of a defense of peremption at a later date, if raised by the surety or sureties, is for another day at another time. We do not consider that issue here.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Named as defendants were Centex's sureties: Seaboard Surety Company; St. Paul Fire & Marine Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; and Federal Insurance Company (collectively the "Sureties").