ROSEMARY LEDET, Judge.
| ]This is a breach of contract suit. The narrow issue presented is whether the payment provision in the construction contract between the parties is a “pay-when-paid” clause — a term of payment — or a “pay-if-paid” clause — a suspensive condition.[1] The trial court, finding that the contract contained a suspensive condition, sustained the dilatory exception of prematurity filed by the defendant, Rotolo Consultants, Inc. (“RCI”), and dismissed without prejudice the suit filed by the plaintiff, Tymeless Flooring, Inc. (“Tymeless”). From this judgment, Tymeless |2appeals. For the reasons that follow, we find that the contract contains a term of payment— a “pay-when-paid” clause. Accordingly, we reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND[2]
This case arises out of a construction contract between Dryades Young Men’s Christian Association (“Dryades”) and Ellis Construction, Inc. (“Ellis”), the prime contractor, for a project -known as the Dryades YMCA Natatorium and Wellness Center in New Orleans, Louisiana (the “Project”). After contracting with Dryades, Ellis entered into a subcontract with RCI for certain portions of the work on the Project. RCI, in turn, entered into a subcontract with Tymeless to perform *147 additional work, as an extra to the contract (the “Subcontract”). Tymeless was thus a subcontractor of a subcontractor on the Project.
After fully performing the work under the Subcontract, Tymeless invoiced RCI. Although RCI made a partial payment, it failed, despite amicable demand, to make full payment. On November 16, 2012, Tymeless filed a Statement of Claim and Privilege with the Orleans Parish Recorder of Mortgages in the principal amount of $24,595.00. On November 15, 2013, Tymeless commenced this suit against RCI.[3] In its petition, Tymeless alleged that RCI was hable to it for the full amount of its lien claim, plus interest, attorneys’ fees, and costs. In support of its | ¡¡claim, Tymeless cited the Subcontract; the Private Works Act, La. R.S. 9:4801, et seq; and the Open Account statute, La. R.S. 9:2781.
In response, RCI filed a dilatory exception of prematurity. The sole basis for RCI’s exception was the payment provision contained in Section 5 of the Subcontract,[4] which provides as follows:
Payments are to be made as follows: 90% of Sub-Contractor’s approved invoices or pay request will be paid subject to the conditions following, after payment by the Owner for Sub-Contractor’s' work. Retention of 10% will be released upon satisfactory completion of this contract and release of final payment by the Owner.[5]
RCI’s position was that the underlying proceeding is premature because the payment provisions contained in the contract have not been triggered. Stated otherwise, RCI’s position was that the Subcontract specified that the amounts Tymeless was seeking to recover from RCI were not owed by RCI “unless and until” RCI itself was paid by Ellis. Given that Ellis had not yet paid RCI these amounts, RCI contended that Tymeless’ suit to secure payment from RCI was premature.
14Agreeing with RCI, the trial court granted RCI’s exception of prematurity and dismissed Tymeless’ suit without prejudice. Tymeless then filed a motion for new trial, which the trial court summarily denied. This appeal followed.
DISCUSSION
An exception of prematurity poses the question of “whether the cause of action has matured to the point where it is ripe for a decision by the court.” 1 Frank L. Maraist and Harry T. Lemmon, LOUISI *148 ANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.6 (1999). An exception of prematurity is governed by La. C.C.P. art. 423, which sets forth the following pertinent rules:
• When the obligation allows a term for its performance, the right to enforce it does not accrue until the term has elapsed.
• If the obligation depends upon a sus-pensive condition,[6] the right to enforce it does not accrue until the occurrence or performance of the condition.
• When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued. '
La. C.C.P. art. 423.
In this case, the dispositive facts are not disputed. • The only dispute presented is a legal one. When, as in this case, “there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is de novo.” Demma v. Automobile Club Inter-Insurance Exch., 08-2810, p. 7, n. 4 (La.6/26/09), 15 So.3d 95, 100 (citing Kevin Associates, L.L.C. v. Crawford, 03-0211, p. 15 (La.1/30/04), 865 So.2d 34, 43).
The narrow legal issue presented in this case is whether, under the provisions of the Subcontract, the non-payment by Ellis (a primary contractor) to RCI (a subcontractor) is a suspensive condition — a “pay-if-paid” clause — to RCI’s obligation to pay Tymeless (RCI’s subcontractor). If so, then, as RCI contends and the trial court found, Tymeless’ suit is premature. If not, then, as Tymeless contends, the provision is a term of payment — a “pay-when-paid” clause — and the trial court erred in granting the exception of prematurity and dismissing the suit.[7]
In order to provide a framework for addressing the issue, we first summarize the jurisprudence distinguishing two types of payment clauses commonly inserted into construction contracts — “pay-when-paid” and “pay-if-paid” clauses.' “The difference between a ‘pay-when-paid’ clause and a ‘pay-if-paid’ clause is vast.” BMD Contractors, Inc. v. Fidelity and Deposit Co. of Maryland, 828 F.Supp.2d 978, 985 (S.D.Ind.2011).[8]
Explaining the vast difference between these two type of clauses, a commentator notes:
A “pay-when-paid” clause governs the timing within which a general contractor must remit payment to its subcontractor, linking the general contractor’s receipt of payment from the owner to the general contractor’s payment to the subcontractor. Under this type of provision, the general contractor must make payment to the subcontractor within a reasonable time, even if the general contractor does not receive payment from the owner.
IfiThe more restrictive “pay-if-paid” clause, however, does not govern the timing of a general contractor’s payment obligation, but rather dictates whether such payment obligations exist at all. *149 Where there is a valid “pay-if-paid” provision in the contract, the general contractor is only required to pay the subcontractor if and to the extent that it receives payment from the owner for the subcontractor’s work. Thus, under a “pay-if-paid” provision, there is a transfer of risk of the owner’s nonpayment from the general contractor to the subcontractor.
Ronald P. Friedberg, “PAY-IF-PAID” CONTRACT PROVISIONS, Providing Some Enforcement Consistency and Predictability in an Unsettled Area of Law, 57 No. 2 DRI For Def. 23 (2015).
A “pay-when-paid” clause is susceptible to the following two interpretations: “(1) as setting a condition precedent to payment or (2) as fixing the point in time when payment would ordinarily occur.” Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd., 196 Ohio App.3d 784, 794, 965 N.E.2d 1007, 1014 (2011). The majority view nationwide is that “pay-when-paid” clauses are timing mechanisms, not condition precedents. William M. Hill, Mary-Beth McCormack, Pay-If-Paid Clauses: Freedom of Contract or Protecting the Subcontractor from Itself?, 31 Construction Law. 26 (Winter 2011). Explaining the rationale behind the majority view, a commentator notes:
At first glance, a logical conclusion from [the “pay-when-paid” clause] language is that if the contractor does not receive payment from the owner, the contractor’s obligation to pay the subcontractor never ripens. The majority of courts, however, refuse to literally enforce pay-when-paid clauses. Instead, the majority of courts construe pay-when-paid provisions as “timing” provisions, requiring payment from the general contractor to the subcontractor in a reasonable time after the work is performed, regardless of when the general contractor receives payment from the owner. In short, courts refuse to permit the shift of risk of the owner’s lack of payment from the general contractor to the subcontractor based on pay-when-paid provisions. As rationale, courts usually point to the harsh effects of conditions precedent, and a general policy of avoiding them if another reasonable reading of a contract is possible.
|7But most courts adopting this interpretation of pay-when-paid clauses leave open the possibility of enforcing these provisions when the language clearly and unequivocally shifts the owner’s credit risk from the general contractor to the subcontractor. The magic language for creating an enforceable condition precedent is usually words like “on condition that,” “if,” “provided that,” or by “some other phrase that conditions performance.” Clauses that attempt to capture this explicit language are typically referred to as pay-if-paid clauses.
Id. at 26-27. “Courts that have enforced such [“pay-if-paid”] provisions uphold the parties’ freedom to contract in such a way that those least able to control or minimize the risk are nevertheless the ones most likely to suffer the consequences of its realization.” 3 Bruner & O’Connor, CONSTRUCTION LAW § 8:47 (2014).
The seminal nationwide case on “pay-when-paid” clauses is Thos. J. Dyer Co. v. Bishop Intern. Engineering Co., 303 F.2d 655 (6th Cir.1962), which espouses the majority view outlined above. The subcontract in Dyer provided that “no part of [the subcontract price] ..'. shall be due until five (5) days after Owner shall have paid Contractor therefor.” Dyer, 303 F.2d at 656. Rejecting the contractor’s argument that the subcontract made payment by the owner a condition precedent to the contractor’s obligation to pay the subcontractor, the court in Dyer reasoned as follows:
*150 In the case before us we see no reason why the usual credit risk of the owner’s insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner.
Dyer, 303 F.2d at 661. Thus, the court’s reasoning in Dyer regarding “pay-when-paid” clauses was premised upon its analysis of the usual relationships among the parties to the subcontract.
lsThe seminal Louisiana case on “pay-when-paid” clauses is Southern States Masonry, Inc. v. J.A. Jones Const. Co., 507 So.2d 198 (La.1987), which adopted the majority view outlined above and cited Dyer with approval. The Southern States case involved claims by subcontractors against general contractors for payment in connection with the Louisiana World’s Fair (the “Fair”). The dispute was prompted by the bankruptcy of the Fair’s owner, the Louisiana World Exposition, Inc. (“LWE”). As a result of its bankruptcy, LWE defaulted on its debts to multiple contractors on the Fair project, which spawned multiple subcontractors to file claims. Defending these claims, the general contractors relied upon the “pay-when-paid” clauses in their subcontracts.
One of the Fair’s general contractors was J.A. Jones; the J.A. Jones subcontract provided:
Contractor shall pay to Subcontractor, upon receipt of payment from the Owner, an amount equal to the value of Subcontractor’s completed work ...
A final payment consisting of the unpaid balance of the Price shall be made within forty-five (45) days after the last of the following to occur ... (c) final payment by Owner to Contractor under the Contract.
Southern States, 507 So.2d 198, 200 (emphasis supplied). Relying on the language in the subcontract, J.A. Jones filed an exception of prematurity, which the trial court sustained and the appellate court affirmed. The Louisiana Supreme Court granted writs in the J.A. Jones case and consolidated it with another case, from this court, involving a similar factual scenario.[9]
| ^Reversing both appellate court decisions and ruling in the subcontractors’ favor, “the Louisiana Supreme Court concluded that the contract provisions reciting essentially that the subcontractor would receive payment after receipt of payment by the general contractor from the owner (the so-called ‘pay when paid’ clauses) are not suspensive conditions, but rather terms for payment which only delay the execution of the respective general contractors’ obligations to make payment, and then only for a reasonable time.” Southern States, 507 So.2d at 200 (emphasis supplied). In so holding, the Supreme *151 Court cited multiple rationales in support of its decision, including the following:
• The general rule of contract interpretation that “[c]ontractual provisions are construed as not to be suspensive conditions whenever possible.” Southern States, 507 So.2d at 201 (citing Schexnayder v. Capital Riverside Acres, 170 La. 714, 129 So. 139 (1930); Cahn Electric Co. v. Robert E. McKee, Inc., 490 So.2d 647, 652 (La.App. 2d Cir.1986)).
• The relevant contract clauses each constituted a term under La. C.C. art. 2049, not a condition. Southern States, 507 So.2d at 203. The clauses dictated when, not if, the contractor’s payment should occur. “The question in both subcontracts relative to payment by the contractor is not ‘if the subcontractors will be paid, but, rather, ‘when’ they will be paid.” Id. at 204.[10]
• The subcontracts were couched in mandatory terms — the J.A. Jones subcontract stated the contractor “shall pay” and that final payment “shall be made;” the other subcontract stated that the contractor “will pay.” Id.
• The contingency of insolvency was not expressly addressed by the contractual clauses; “[i]t is not reasonable to infer from the language used in these contracts that the parties either agreed, or contemplated, that should LWE not pay the general contractors, then in that event the subcontractors would not have to be paid by the general contractors.” Id. at 203-04. “[I]f | insuch was the intent of the parties it should have been expressed in clearer and more explicit language.” Id. at 204, n. 12.
• The contract clauses were ambiguous; and “[t]he ambiguity in both contracts may have been somewhat alleviated had either general contractor used the conjunction ‘if in the payment provision in the subcontract.” Id. at 206. The use of “if’ in these provisions “might have evidenced the parties’ intention to condition receipt of payment by the subcontractor upon receipt of payment from the owner to the general contractor.” Id. Fatal to the general contractors’ cases was their “failure to include such conditional language, or something even more explicit in the subcontractors.” Id.
The Southern States case stands for the proposition that to create an enforceable “pay-if-paid” clause the parties’ intent to do so must be explicitly expressed in their agreement. Including conditional expressions, such as “if’ or “unless or until,”[11] aids in alleviating the ambiguity and making the parties’ intent explicit; “[f]urthermore, where the parties intend to share any risk arising from an owner’s unanticipated insolvency, the contract should provide explicitly for this contingency.” Susan R. Laporte, Casenote, “Pay When Paid”: Reasonable Time Term or Conditional Obligation? Southe *152 rn States Masonry, Inc. v. J.A. Construction Co., 34 Loy. L.Rev. 431, 447 (1988).
Tymeless cites the Southern States case as dispositive. In support, Tymeless contends that the language in the Subcontract in this case is indistinguishable from the language in the J.A. Jones subcontract in the Southern States case. Tymeless further contends that there is no difference in the meaning of “after payment by the owner” — the language in the Subcontract in this case — and “upon receipt of payment from the owner” — the language in the J.A. Jones subcontract in the | nSouthern States case. Tymeless thus contends that, like the contract in the Southern States case, the Subcontract in this case contains a “pay-when-paid” clause; hence, it submits that the trial court erred in dismissing its suit as premature.
RCI counters that the trial court correctly found the payment provision in the Subcontract operates as a suspensive condition — a “pay-if-paid” provision. RCI further counters that the Subcontract expressly provides that payments — both progress and final — by RCI to Tymeless are “subject to the conditions following”: (i) receipt of payment by the Owner for the Subcontractor’s work; and (ii) release of final payment by the Owner. In support, RCI cites the following two cases in which Louisiana courts have found conditional payment arrangements fit the model of “pay-if-paid” provisions: Imagine Const., Inc. v. Centex Landis Constr. Co., 97-1653 (La.App. 4 Cir. 2/11/98), 707 So.2d 500; and Coastal Development Group, L.L.C. v. International Equip. Distributors, Inc., 10-1202 (La.App. 1 Cir. 2/11/11) (unpub.), 2011 WL 766608.
RCI contends that this court’s reasoning in the Imagine case regarding the parties’ recognition and acknowledgement of the possibility that the owner could fail to make payments is equally applicable in this case. The language of the Subcontract, RCI contends, anticipates the reasonably foreseeable possibility that Dryades, the owner, would fail to make payment under the general contract to Ellis, the general contractor; and that payment to RCI, Ellis’ subcontractor, would be delayed, if not, completely denied. (As noted earlier, Tymeless is RCI’s subcontractor.) According to RCI, the language of the Subcontract provides that its payment obligation does not arise “unless and until 1) it is paid by Ellis [the general contractor], who is paid by Dryades [the owner] and 2) Dryades releases final payment.” Under these circumstances, RCI contends that since it has not been | 12paid, its payment obligation has not been triggered. RCI thus submits that Tymeless’s suit seeking payment from it is premature.
The determinative factor in interpreting whether a payment provision is a “paid-when-paid” clause — a term of payment — or a “pay-if-paid” clause — a suspen-sive condition — is the language in the contract. Solomon & Filipowski, Inc. v. Boes Iron Works, Inc., 621 So.2d 882, 884 (La.App. 4th Cir.1993). Because of the harsh consequences of enforcing “pay-if-paid” clauses, the jurisprudence has imposed a requirement that to be enforceable, such clauses must contain “ ‘clear, and unequivocal language set forth unambiguously on the face of the contract.’ ” Sloan & Co. v. Liberty Mut. Ins. Co., 653 F.3d 175, 181, n. 9 (3d Cir.2011); Southern States, 507 So.2d at 206. Although no particular language is necessary, the jurisprudence has enforced “pay-if-paid” clauses that expressly include the following language: (1) payment to the contractor is a condition precedent to payment to the subcontractor; (2) the subcontractor is to bear the risk of the owner’s nonpayment; or (3) the subcontractor is to be paid exclusively out of a fund the sole source of which is the owner’s payment to the subcontractor. *153 Evans, Mechwart, Hambleton & Tilton, 196 Ohio App.3d at 791, 965 N.E.2d at 1012-13; see also Sloan & Co., supra.
Illustrative, this court in the Imagine case relied on the inclusion of the term “condition precedent” in the subcontract to find it contained a “pay-if-paid” clause. <See Southern States, supra (noting that a condition precedent is the common law equivalent to the civilian concept of a sus-pensive condition).[12] We reasoned that | isthe most important language in the subcontract was the condition precedent language — the statement that “the subcontractor agrees that full payment from the owner shall be a condition precedent to the bringing of any action by a subcontractor against the defendants.” Imagine, 707 So.2d at 502 (emphasis in original). The condition precedent language, we noted, specifically recognized and acknowledged the possibility of the owner’s complete failure of making either progress or full payments. Distinguishing the Southern States case, we reasoned that the subcontract before us “more specifically and explicitly sets forth language which particularizes that payment is to be made to the subcontractor only if actual payment is made to the contractor by the owner.” Id. (emphasis in original). The possibility of the owner failing to make payment, we concluded, was reasonably foreseen and intended to be addressed by the language of the payment provision. Until actual receipt of payment from the owner, we held that any action by the subcontractor against the contractor was premature.[13]
Unlike in the Imagine case, but like in the Southern States case, the Subcontract in this case does not contain “condition precedent” language. Nor does the Subcontract contain additional language that specifically recognizes the | ^possibility that there may be a complete failure of payment — that the subcontractor is to bear the risk of the owner’s nonpayment. Nor, contrary to RCI’s suggestion, does the Subcontract contain “unless and until” language. If the Subcontract did contain “unless and until,” “condition precedent,” or similar conditional language, RCI’s argument might be persuasive.[14]
In sum, the Subcontract contains no language that would qualify it as a “pay-if- *154 paid” clause; it is a classic “pay-when-paid” provision. Indeed, as Tymeless points out, the language in the Subcontract is indistinguishable from the language in the J.A. Jones subcontract in Southern States. We thus find the trial court erred in construing the language in the Subcontract as a “pay-if-paid” clause. Southern States, supra, (holding equivalent language is a “pay-when-paid” clause). Accordingly, we reverse the trial court’s ruling, overrule the exception of | isprematurity, and remand for the trial court to determine whether a reasonable time for the contractor to pay has elapsed.

DECREE

For the foregoing reasons, the judgment of the trial court is reversed; and the case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.

. "Although some courts use the phrases ‘pay-when-paid’ and ‘pay-if-paid’ clauses interchangeably, most courts now treat pay-when-paid clauses differently than pay-if-paid provisions.” William M. Hill, Mary-Beth McCormack, Pay-If-Paid Clauses: Freedom of Contract or Protecting the Subcontractor from Itself?, 31 Construction Law. 26 (Winter 2011). Distinguishing these two types of provision, the court in MidAmerica Const. Management, Inc. v. MasTec North America, Inc., 436 F.3d 1257, 1261-62 (10th Cir.2006), stated:
Most courts hold that [the "pay-when-paid”] type of clause at. least means that the contractor’s obligation to make payment is suspended for a reasonable amount of time for the contractor to receive payment from the owner. The theory is that a "pay-when-paid” clause creates a timing mechanism only. Such a clause does not create a condition precedent to the obligation to ever make payment, and it does not expressly shift the risk of the owner's nonpayment to the subcontractor....
Under a "pay-if-paid” provision in a construction contract, receipt of payment by the contractor from the owner is an express condition precedent to the contractor’s obligation to pay the subcontractor.

. Given the pre-trial status of this case coupled with the lack of an evidentiary hearing on the exception of prematurity, the only facts in the record are those pled in Tymeless' petition.

. Fidelity Deposit Company of Maryland ("Fidelity”) was also named as a defendant. According to the parties, Fidelity issued a payment bond on the Project. Tymeless alleged that Fidelity had filed a "Release of Lien Bond” with the Recorder of Mortgage, can-celling the Statement of Claim and Privilege that Tymeless had filed. As a result, Tymeless asserted that Fidelity was liable to it.

. A copy of the Subcontract is not in the record on appeal. Nor was a copy of the Subcontract before the trial court at the hearing on the exception of prematurity. Nonetheless, as Tymeless represents in its appellant brief, "both RCI and Tymeless agree that the payment clause within the [Subcontract contains the wording exactly as copied and included within the ‘Memorandum in Support of Exception of Prematurity’ submitted by RCI.” We thus assume the language of the Subcontract quoted in the pleadings to be correct. See Vector Elec. & Controls, Inc. v. JE Merit Constructors, Inc., 05-2244 (La.App. 1 Cir. 11/8/06), 941 So.2d 201 (unpub.), 2006 WL 3208462 (addressing a similar issue and concluding that "[o]n appeal, neither JE Merit or Vector Electric dispute the accuracy of the quoted language; therefore, we presume it to be correct as it appears in the trial court’s reasons for judgment.”).

.The parties indicate that Section 4 of the Sub-Contract stipulates that where appropriate, the word "Contractor” should be substituted for "Owner” and the word “Sub-Contractor” for the word "Contractor.”

.A suspensive condition is defined by La. C.C. art. 1767, which states:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.

. Although Tymeless asserts four assignments of error on appeal, the gist of all its contentions is that the trial court erred in sustaining RCI’s dilatory exception of prematurity.

. This case was affirmed on appeal in BMD Contractors, Inc. v. Fidelity & Deposit Co. of Maryland, 679 F.3d 643, 649 (7th Cir.2012).

. The operative language in the other consolidated case, from this court, read as follows:
Contractor agrees that he will pay to the said Sub-Contractor ... ninety percent (90%) of the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor, ... except that final payment will be made ... immediately following final completion and acceptance of such materials and work by the Architect and final payment received by said Contractor.
Southern States, 507 So.2d at 201.

. Translated, the Supreme Court, in effect, held the subcontractors contained "paid-when-paid" clauses, not "pay-if-paid”'clauses.

. In Lambert Electric Co. v. HCB Contractors, (E.D.La.1987) (unbpub.), 1987 WL 16349, the federal district court addressed another subcontract dispute spawning from LWE’s bankruptcy. In that case, the subcontract provided that "payments shall , not become due subcontractor unless and until contractor receives payment for such work from ownér.” Id. Distinguishing the Southern States case, the federal district court reasoned that the language used in the subcontract— "shall not” and "unless and until” — unambiguously expressed the parties’ intent to create a suspensive condition — a "pay-if-paid” clause.

. The pertinent language in the subcontract in Imagine case was as follows:
Notwithstanding anything to the contrary ..., Subcontractor shall not be entitled to receive any progress payment or final payment prior to Centex Landis’ actual receipt of that payment from Owner. Subcontractor agrees that Centex Landis' actual receipt of full payment from Owner shall be a condition precedent to the bringing of any action by Subcontractor hereof against Centex Landis or its surety, if any, relating to Contractor's failure to make payment. ...
Imagine, 707 So.2d at 502.

. Our decision in Imagine was cited with approval by the court in Vector Elec. & Controls, Inc. v. JE Merit Constructors, Inc., 05-2244 (La.App. 1 Cir. 11/8/06), 941 So.2d 201 (unpub.), 2006 WL 3208462. In Vector, the court noted that both in the case before it and in the Imagine case the subcontractors were to be paid only if the owners made payments to the contractors. The court in Vector held that "[t]he clear and unambiguous ‘condition precedent’ language in the subcontract before us mandates that until actual receipt of payment by the contractor from the owner occurs, the right of the subcontractor to receive payment from the contractor is premature. The 'condition precedent' language is clearly distinguishable from the terms of payment language found in the Southern States case.” Id.

.As noted, the other case RCI cites in which a Louisiana court has found a "paid-if-paid” clause is Coastal Development Group, L.L.C. v. International Equip. Distributors, Inc., 10-1202 (La.App. 1 Cir. 2/11/11) (unpub.), 2011 WL 766608. In the Coastal case, the Parish of Livingston entered into a general contract with IED for hurricane debris removal. IED, in turn, entered a subcontract with Coastal, which included the following language:
*154 5.5 In the event that payments, or total payment owed under the prime contract between [IED] and [the Parish — the Project Owner], shall be withheld or reduced for any reason, including but not limited to any adverse determination with respect to whether the Work constitutes Eligible work ... then [IED] shall have the right to proportionately (by percentage) reduce the amount of its payment to Subcontractor for the Work or line item reduced or withheld by [the Parish]....
5.7 All payments from [IED] to [Coastal] are advances, subject to the availability of funds from [the Parish] and the State of Louisiana.... [IED] shall not be bound to make any payments to [Coastal] until [IED] has received payments from [the Parish] for services.
Id. Finding the above language set forth a "pay-if-paid” clause, the court in Coastal reasoned that "the possibility that FEMA would not find the work eligible was clearly contemplated by the parties” and that "these clauses in the subcontract condition payment to Coastal on FEMA’s approval of the work and payment to IED from the Parish.” Id. In support of its finding, the court in Coastal cited Imagine, supra, and Vector, supra. Given the additional language in the subcontracts at issue in Imagine, Vector, and Coastal that is not present in the Subcontract in this case, those cases are distinguishable from the this case.