532 So.2d 830 (1988)
C. BEL FOR AWNINGS, INC.
v.
BLAINE-HAYS CONSTRUCTION COMPANY.
No. 88-CA-0268.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1988.
*831 Charles W. Nelson, Jr., New Orleans, for Blaine-Hays Const. Co., Inc.
Sidney M. Bach, Gerald Wasserman, Bach & Wasserman, Metairie, for C. Bel for Awnings, Inc.
Before WARD, WILLIAMS and PLOTKIN, JJ.
WARD, Judge.
This appeal arises as a result of disputed interpretations of contractual obligations. On September 1, 1983 and February 13, 1984, Blaine-Hays Construction Company, a World's Fair general contractor, entered into two subcontracts with C. Bel for Awnings, Inc. Both subcontracts contained a provision known as a "pay when paid" clause which read:
The contractor agrees to pay the subcontractor... as the work progresses on estimates made and approved by the Contractor and/or Architect and payment received from the owner. (emphasis added)
When it became apparent Louisiana World Exposition, Inc. (LWE), the owner of the fair, was insolvent and could not fully pay its contractors, Blaine-Hays refused to make payments to C. Bel, although C. Bel had satisfactorily completed all work under both subcontracts.
After corresponding about payment, Blaine-Hays sent C. Bel two documents entitled "Agreement". The documents are similar; only the job description and contract prices differ because each agreement refers to a separate subcontract. On August 16, 1984 C. Bel signed the agreements and received partial payments under each subcontract. One of the agreements is attached as Appendix 1.
After the Louisiana Supreme Court held that "pay when paid" clauses express only a term for payment within a reasonable time, C. Bel made demand for payment in full. Blaine-Hays refused the demand. C. Bel then filed suit for the balance of payment. Blaine-Hays answered the suit, relying on the August 16 agreements which it maintains changed the "pay when paid" clause from a "reasonable time to pay" to a suspensive condition relieving it of the obligation to pay C. Bel until LWE paid it.
The Trial Court held that the subcontracts provide that C. Bel is entitled to be paid within a reasonable time and rejected Blaine-Hays' construction of the agreements which would entitle C. Bel to be paid only if Blaine-Hays received payment. We reverse the ruling of the Trial Court.
In those cases relied upon by C. Bel, Southern States Masonry, Inc. v. J.A. Jones Construction Company, et al c/w Strahan d/b/a Strahan Painting Company v. Landis Construction Company, Inc., et al, 507 So.2d 198 (La.1987), World's Fair subcontractors sued to recover payment from their contractors. The contractors defended their refusal to pay, claiming that the "pay when paid" clauses provided a suspensive condition that the contractors must first receive payment from LWE before they were obligated to pay the subcontractors.
The "pay when paid" clause in Southern States reads:
3. ... Contractor shall pay to Subcontractor, upon receipt of payment from *832 the Owner, an amount equal to the value of Subcontractor's completed work, to the extent allowed and paid by Owner on account of Subcontractor's work.... 507 So.2d at 200. (emphasis added)
In Landis the clause reads:
IN CONSIDERATION WHEREOF, The said Contractor agrees that he will pay to the said Sub-Contractor ... the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor... 507 So.2d at 201. (emphasis added)
In both the Landis and Southern States cases, the Supreme Court disagreed with the contractors and concluded that the language of the "pay when paid" clauses expressed a term for payment, not a condition to payment. The Court determined that the parties considered payment by LWE to the contractor a reasonably certain event. Moreover, the payment obligations were expressed in mandatory terms by use of the phrases "when payment was received from the owner" and upon receipt of payment from the Owner ..."
The August 1984 agreements clearly remove the present case from the factual context of Southern States and Landis. In those cases there were no other agreements and the Supreme Court interpreted the "pay when paid" clause after examining the subcontracts. The only manifestation of the parties' intent was in the "pay when paid" clause of the subcontracts. In this case, the parties' expressed their understanding of the meaning of "pay when paid" in the August 1984 agreements. The agreements stated in part:
Whereas, LWE has failed to make required payments to Blaine-Hays under the Prime Contract:
Whereas, as of this date, Subcontractor has unpaid billings under the subcontract... and the parties are desirous of providing a method for payment to the subcontractor if and when payments are received by Blaine-Hays from LWE: and
. . . . .
2. The parties acknowledge that under paragraph 29 of the Subcontract, Subcontractor is not entitled to receive payment from Blaine-Hays until Blaine-Hays receives payment from LWE.
This is convincing evidence that the parties did not consider either payment by LWE as a reasonably certain event or that the "pay when paid" clause was merely a term for payment; but rather, that the parties considered the "pay when paid" clause a suspensive condition to payment.
Even if the clause were not a suspensive condition, the Trial Court ruling must be reversed. The agreements have the characteristics of "transaction or compromise", C.C. art. 3071 et seq., as well as the appearance of a "novation," C.C. art. 2185 et seq., vacated by Act of Jan. 1, 1985, No. 331 (reenacted as amended at C.C. arts. 1879 et seq. [West 1987]).
Blaine-Hays apparently offered partial payment to avoid possible litigation under the subcontract. C. Bel accepted, and the dispute over payment under the subcontract was ended. The agreements provide in part:
6. Subcontractor agrees that it will take no legal action for collection of its billings under the Subcontract unless Blaine-Hays breaches this agreement.
C. Bel cannot now resurrect its claim against Blaine-Hays. A "transaction or compromise" occurred between the parties which must be given a force equal to the authority of things adjudged. C.C. art. 3078.
On the other hand, by executing the agreement, it appears the parties substituted one obligation for another. In the new obligation, Blaine-Hays promised to use its best efforts to obtain payment from LWE; C. Bel promised that it would take no legal action for collection of its billings under the subcontract. Arguably, a novation occurred.
*833 Under either theory, C. Bel has no further claims under the subcontract. If the August 16, 1984 agreements are neither a "transaction or compromise" nor a "novation" they are meaningless. C. Bel would still only receive payment if and when Blaine-Hays was paid.
Accordingly, the Trial Court ruling is reversed. All costs of this appeal are assessed to C. Bel.
REVERSED.
*834
APPENDIX I
AGREEMENT
 
 This Agreement made this 16th day of August, 1984
by and between Blaine-Hays Construction Company, Inc. ("Blaine-Hays")
and C. Bel for Awning ("Subcontractor").
 WHEREAS, the parties hereto entered into a subcontract agreement (the
"Subcontract") dated February 13. 1984, 1984, relating
tocanvas covering work for North/South Entrance Zone ;
 WHEREAS, the Subcontract was for work to be performed under a prime contract
(the "Prime Contract") between Blaine-Hays and the Louisiana World Exposition, Inc.
("LWE");
 WHEREAS, LWE has failed to make required payments to Blaine-Hays under the
Prime Contract;
 WHEREAS, as of this date, Subcontractor has unpaid billings under the Subcontract
in the amount of $ 13,738.00 and the parties are desirous of providing a method
for payment to the Subcontractor if and when payments are received by Blaine-Hays
from LWE; and
 WHEREAS, LWE has paid Blaine-Hays 66.58327% of its draw due May 20, 1984 under
the Prime Contract.
 NOW, THEREFORE, in consideration of the mutual covenants and agreements
contained herein, and $1.00 in hand paid by Blaine-Hays Construction Company to
subcontractor, the parties agree as follows:
 1. Other than as set forth above, Subcontractor has performed no other work
for Blaine-Hays in connection with the Prime Contract and no other monies are to
become due under the Subcontract.
 2. The parties acknowledge that under paragraph 29 of the Subcontract,
Subcontractor is not entitled to receive payment from Blaine-Hays until Blaine-Hays
receives payment from LWE.
 3. Upon execution and delivery of this Agreement, Blaine-Hays shall pay to
Subcontractor an amount equal to 66.58327% of its draw under the Subcontract which
was due May 20, 1984. 
 4. As Blaine-Hays receives future payments from LWE, Subcontractor shall then
be entitled to receive that percentage of each such payment determined by the ratio of its unpaid allowed
billings under the Subcontract to the total amount due Blaine-Hays
under the Prime Contract. By example, if the amount owed to Subcontractor represented
10% of the amount due Blaine-Hays from LWE, then Subcontractor would be entitled to
receive 10% of an LWE payment to Blaine-Hays.
 5. Blaine-Hays agrees that it will use its best efforts to insure collection
of all amounts due on the Prime Contract and pay such sums promptly to Subcontractor
in accordance with this agreement.
 6. Subcontractor agrees that it will take no legal action for collection of
its billings under the Subcontract unless Blaine-Hays breaches this Agreement.
 WHEREAS, the parties have executed this Agreement, this 16th day of August 1984.
 BLAINE-HAYS CONSTRUCTION COMPANY
 By: 
 W. Colby Reeves, Jr.
 Vice President Corporate Development
 
 C. Bel for Awning
 By: