ARMSTRONG, Judge.
Blue Streak Marine, Inc., appeals the trial court’s judgment finding it liable to plaintiff, Aries Marine Corporation and Atlantic International, LTD. d/b/a International Lift Boats, “ILB”, for commissions owed under a joint venture agreement between the parties, dismissing its reconven-tional demand, and assessing court costs against it.
On October 22, 1986, Aries Marine Corporation, Atlantic International, LTD. and Blue Streak Marine, Inc. formed a joint venture pursuant to a joint venture agreement. Generally, the Agreement provided that the joint venture would market the three companies’ lift boats, assign the jobs procured on a rotating basis, and administer the duties necessary to accomplish these tasks. Specifically, the agreement provided, among other things, the manner in which the joint venture would be capitalized, how the joint venture would be compensated for its services, and the consequences of any joint venturer’s withdrawal from the joint venture.
On February 25, 1987, Blue Streak tendered its voluntary withdrawal from the joint venture pursuant to paragraph X of the Agreement. Blue Streak had received a number of work referrals prior to its withdrawal for which it had not compensated the joint venture pursuant to the terms of the agreement.
ILB initiated this proceeding to recover, among other things, $33,671.69 for commissions due pursuant to the terms of the agreement. Blue Streak answered generally denying ILB’s claims, and subsequently reconvened seeking a return of its capital contribution, profits earned by the joint venture as of the date of Blue Streak’s *414 withdrawal, and approximately $2,000.00 in unreimbursed expenses. After a two day trial on the merits, the district court awarded ILB judgment against Blue Streak for the full amount of the commissions sought, and dismissed Blue Streak’s reconventional demands without prejudice.
Blue Streak argues that under the joint venture agreement commissions are not earned until they are received. Since ILB failed to prove that all outstanding invoices had been paid it was error for the trial court to find that $33,671.69 in commissions were due. Further, Blue Streak argues that ILB had knowledge that some of the invoices were not paid.
The trial court construed the billing method as one on open account and concluded that commissions were earned when invoices were submitted. We reach a different conclusion from our reading of the joint venture agreement.
... (c) All charges for day rate and/or subsistence shall be paid directly to the owner/operator of the vessel by the user, and the Joint Venture shall upon the owner/operator’s receipt of any such funds have earned a commission of 2.5% on the gross day rate and or subsistence from any such job procured.
Emphasis added. ILB relies upon Southern State Masonry v. J.A. Jones Construction, 507 So.2d 198 (La.1987), to assert that paragraph 11(c) expresses a term for payment, not a condition. However, this language is distinguishable from the language in Southern State Masonry which provided as follows:
Contractor shall pay to subcontract upon receipt of payment from the owner, an amount equal to the value of the subcontractor’s completed work.
Id. at 201-202, emphasis added. The Supreme Court held that the “pay when paid” clause expressed a term for payment, not a suspensive condition. The case at hand is distinguishable because the joint venture agreement includes an “earned when paid” clause.
Our reading of the joint venture agreement makes payment of commissions to the joint venture dependent upon the commissions being earned. Commissions are only earned when the venturer, owner/operator, is paid by the user. According to Civil Code Article 1767, a suspensive condition is that which depends on a future uncertain event. In this case, the future uncertain event is the earning of the commission.
Blue Streak claims that they were never paid by the users and thus suffered a loss. According to Hart v. McDonald, 28 So. 169 (La.1900), the party who claims a loss must establish it with reasonable certainty. In Hart, McDonald claimed that he had contributed large sums of money to the venture and that his co-venturer, Hart, had failed to pay for any of these expenditures. Id. at 176. The Supreme Court refused to grant judgment in favor of McDonald because he failed to prove the loss he had sustained.
In the case at hand, Blue Streak has asserted a loss and therefore must bear the burden of proof. The record is devoid of any proof that Blue Streak was not paid by the users. In the absence of proof, Blue Streak’s obligation to pay commissions to the joint venture is due and owing.
Secondly, Blue Streak argues that it was error for the trial court to dismiss its reconventional demand, particularly its demand for reimbursement for telephone equipment which it purchased for the joint venture’s office. The total amount Blue Streak paid for purchase and installation of the equipment was $3,988.78 and to date it has been paid $1,680.21. Blue Streak argues that the balance of $2,298.63 is still outstanding.
ILB argues that Blue Streak purchased the telephone system and provided it to the joint venture pursuant to the terms of paragraph V(c). Paragraph V(c) provides that the joint venturer that contributed physical assets to the operation would retain ownership and would be compensated by the joint venture for its use. ILB argues that it paid Blue Streak for the use of its telephone equipment. Accordingly, on Blue Streak’s withdrawal, Blue Streak was entitled to take its telephone equipment with it.
*415 After reviewing the record it is clear that ILB was not under the impression that the telephone had been supplied pursuant to paragraph V(c). It had been purchased and installed in the offices specifically for the use of ILB. Blue Streak never enjoyed ownership of this property nor was it ever intended to. It simply bore responsibility of having the equipment installed on behalf of the joint venture. The fact that ILB paid for a portion of the purchase and installation costs prior to Blue Streak’s withdrawal suggests that ILB did understand that ownership of this equipment would vest in the joint venture.
It was not error for the trial court to dismiss Blue Streak’s demand for the return of its capital contribution and the value of its interest in the joint venture at the time of its withdrawal. ILB maintains that paragraph V(a) of the joint venture agreement provides that capital contribution shall be used for the purpose of paying initial cost of operation of the joint venture. Under paragraph VII(b) of the joint venture agreement no positive duty exists to ever return the capital contributions unless profits are distributed:
Capital contributions shall be returned prior to distribution of any profits.
There were no profits to distribute at the time of Blue Streak’s withdrawal from the joint venture.
Blue Streak is likewise barred from receiving its interest in the joint venture by paragraph X of the agreement. Paragraph X provides that a joint venturer shall waive any right, claim or interest in any undistributed or future profits and/or losses of the joint venture upon voluntary withdrawal. Blue Streak voluntarily withdrew from the joint venture.
Finally Blue Streak argues that it should be compensated for the costs of the first appeal and the two supervisory writs taken in these proceedings as well as the appraisal and the conveyance certificate which was ordered on ILB’s request.
In the first appeal, this court’s holding was procedural, to wit, that the trial court erred in granting a partial summary judgment instead of timely ruling on the entire matter before it. This court assessed costs to ILB.
Blue Streak incurred the costs of the appraisal, the conveyance certificate and two supervisory writs in an effort to refute ILB’s argument that the immovable property securing the first suspensive appeal was not sufficient. The first writ was taken to contest the trial court’s order for appraisal and conveyance certificate because it was made on an ex parte motion. This court granted the writ ordering that another hearing be convened. As a result of that hearing the trial court reinstituted its order. The appraisal was in a sufficient amount and the conveyance certificate showed ownership to remain in the entity offering the property as security. The second supervisory writ contested the trial court’s ruling that previously mortgaged property was inadequate to secure the bond. Again relator’s writ was granted when this court found that the property was adequate.
La.C.C.P. article 1920 provides that where a judgment is silent as to costs, the “... party cast ...” is to pay the costs. Applying this rule ILB should bear the costs of the first appeal, $1,961.00, and both writs, $122.00.
There is simply no evidence which' indi- . cates that the district court abused its discretion in requiring Blue Streak to incur $350.00 to establish the sufficiency of its suspensive appeal bond.
For the foregoing reasons, we affirm the trial court’s judgment finding Blue Streak liable to ILB for unpaid commissions in the amount of $33,671.69 and that Blue Streak is not entitled to off-set this amount by its capital contribution or the value of its share at the time of withdrawal. We reverse the trial court’s ruling dismissing Blue Streak’s reconventional demand for reimbursement for telephone equipment and award Blue Streak $2,298.63 which represents the outstanding balance on purchase and installation. Further we reverse the trial court’s ruling and order ILB to pay for Blue Streak’s appeal of the partial summary judgment amounting to $1,961.00 *416 and the two civil writs totalling $122.00 but affirm its ruling that Blue Streak must bear the $350.00 cost for the appraisal and conveyance certificate. All sums to include legal interest from the date of judicial demand.
AFFIRMED, in part
REVERSED, in part.