STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CU 1537

ALEJANDRA CAROLINA GUTIERREZ

VERSUS

JOSHUA LAWRENCE BRUNO

JUDGMENT RENDERED: ___AUG 0 5 2020___

* * * * * * *

Appealed from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne • State of Louisiana
Docket Number 175764 • Division "C"

The Honorable Juan W. Pickett, Judge Presiding

* * * * * * *

| | |
|---|---|
| D. Douglas Howard, Jr.<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLANT<br>PLAINTIFF—Alejandra Carolina<br>Gutierrez |
| Marc D. Winsberg<br>Robin Penzato Arnold<br>Elisabeth L. Baer<br>Jonathan D. Gamble<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLEE<br>DEFENDANT—Joshua Lawrence<br>Bruno |
| Brian J. Marceaux<br>Julius P. Hebert, Jr.<br>Houma, Louisiana | |

* * * * * * *

BEFORE: GUIDRY, WELCH, AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

Guidry, J. concurs

**WELCH, J.**

In this acrimonious child custody dispute, the mother, Alejandra Carolina Gutierrez, appeals a judgment in favor of the father, Joshua Lawrence Bruno, the domiciliary parent, which upheld his choice of school for the children and granted his request to modify their physical custodial schedule to accommodate that choice, as well as the joint custody implementation plan rendered in furtherance of that judgment. For reasons that follow, we affirm the judgment and joint custody implementation plan and issue this memorandum opinion in compliance with Uniform Rules—Courts of Appeal, Rule 2-16.1(B).

Ms. Gutierrez and Mr. Bruno were involved in an intimate relationship. As a result of that relationship, twins, A.J.B. and S.L.B., were born on September 28, 2015. The twins were born prematurely with severe complications. In particular, A.J.B. was born with severe cardiovascular, pulmonary, and digestive issues, and as a result, has undergone numerous surgical procedures and hospitalizations.

Shortly after the birth of the twins, on November 3, 2015, Ms. Gutierrez filed a petition seeking to establish filiation, custody, and child support. Since that time the parties have been engaged in extensive, contentious litigation over the custody of the children. Ultimately, after a ten day trial on various issues, including custody, the trial court signed a judgment on July 17, 2018 that, among other things, awarded the parties joint custody of the children, designated Mr. Bruno as the children's domiciliary parent, and awarded the parties physical custody of the children on an equal basis.[2]

Thereafter, on March 18, 2019, Mr. Bruno filed a motion seeking to "enforce" the domiciliary parent provision of the July 17, 2018 judgment.[3]

---

[2] The record indicates that the judgment was signed on July 17, 2018; however, the parties and the trial court refer to the date of July 18, 2018.

[3] Mr. Bruno's motion incorrectly states that the judgment was signed on July 18, 2018. See footnote 2.

Therein, Mr. Bruno noted that he lived in New Orleans and Ms. Gutierrez lived in Houma and that for the 2018-2019 school year, the children had been attending two different pre-schools—one in New Orleans (the Little Gate program at McGehee School) and one in Houma (St. Gregory Barbarigo Catholic School)—on an alternating weekly schedule in accordance with the physical custodial arrangement. Mr. Bruno asserted that the children were beginning to experience speech delays and other communication and social issues and that the consistency of attending one school full time for the 2019-2020 school year would be in the children's best interest for social and educational growth. Mr. Bruno further asserted that as domiciliary parent, he would like the children to attend McGehee for numerous reasons, including the fact that during the school day, McGehee offered the speech therapy needed by the children through the New Orleans Speech and Hearing Center ("NOSH"). Mr. Bruno further asserted that he had reached out to Ms. Gutierrez through various means of communication to discuss the children's educational future, but claimed that she had ignored his requests, rejected his decision regarding the children's attendance at McGehee for the 2019-2020 school year, and insisted that the children continue to attend two different schools for the 2019-2020 school year, i.e., that the children continue to attend school in Houma during her custodial weeks. Therefore, Mr. Bruno requested that the court enforce the July 17, 2018 judgment by upholding his decision, as the domiciliary parent, that the children attend one school—McGehee—full time for the 2019-2020 school year, and further, that the court modify the physical custodial schedule in order to accommodate the children's attendance at that school during the school week throughout the academic year.

A two-day trial was held on June 18-19, 2019, wherein the trial court heard testimony from Mr. Bruno, Ms. Gutierrez, and Mr. Bruno's expert witness in pediatric psychology, Dr. Carrie Elizabeth Emonet. Thereafter, on August 8, 2019,

the trial court signed a judgment granting Mr. Bruno's motion to enforce the domiciliary parent provisions of the July 17, 2018 judgment, upholding Mr. Bruno's decision regarding the choice of school for the children, and granting Mr. Bruno's request to modify custody in accordance with the joint custody implementation plan attached to the judgment. The joint custody implementation plan attached to the judgment provided, among other things, that Mr. Bruno, the domiciliary parent, would have physical custody of the children for the weekdays during the school year, with Ms. Gutierrez having physical custody of the children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. In addition, the joint custody implementation plan provided that Ms. Gutierrez would have physical custody of the children during the summer, with Mr. Bruno having physical custody of the children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., plus two non-consecutive weeks that would coincide with his weekend visitation. In addition, the joint custody implementation plan set forth a specific custodial schedule for holidays.

From this August 8, 2019 judgment and joint custody implementation order, Ms. Gutierrez has appealed. On appeal, Ms. Gutierrez asserts that the trial court erred in: (1) enforcing a provision that was not being challenged, *i.e.*, Mr. Bruno's domiciliary status, and upholding Mr. Bruno's decision regarding the choice of school for the children without a motion brought by Ms. Gutierrez pursuant to La. R.S. 9:335(B)(3);[4] and (2) modifying the parties' physical custodial arrangement without regard to the standard or burden of proof set forth in **Bergeron v. Bergeron**, 492 So.2d 1193, 1200 (La. 1986), establishing a change in

---

[4] As to this issue, Ms. Gutierrez also filed a peremptory exception raising the objections of no cause of action and lack of a justiciable controversy with this Court. An appellate court may consider a peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for decision, and if proof of the ground of the exception appears of record. La. C.C.P. art. 2163. However, consideration of such an exception is discretionary with the appellate court. **Southern States Masonry, Inc. v. J.A. Jones Const. Co.,** 507 So.2d 198, 207 (La. 1987). Because we find no error in the trial court's judgment or in its implicit decision to consider and rule on Mr. Bruno's motion, we decline to address the peremptory exceptions.

circumstances, or considering the factors set forth in La. C.C. art. 134 regarding the best interests of the children.

Every child custody case must be viewed in light of its own particular set of facts and circumstances. **Major v. Major**, 2002-2131 (La. App. 1st Cir. 2/14/03), 849 So.2d 547, 550; **Gill v. Dufrene**, 97-0777 (La. App. 1st Cir. 12/29/97), 706 So.2d 518, 521. The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; **Evans v. Lungrin**, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731, 738. In determining the best interest of the child, La. C.C. art. 134(A) enumerates fourteen non-exclusive factors to be considered by the trial court, which include:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The list of factors set forth in La. C.C. art. 134 is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b). Thus, the trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. **Major**, 849 So.2d at 550. Furthermore, in most child custody cases, the trial court's determinations are based heavily on factual findings. It is well-settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

Louisiana Revised Statutes 9:335 provides, in pertinent part:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

\* \* \*

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

\* \* \*

6

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) *The domiciliary parent shall have authority to make all decisions affecting the child* unless an implementation order provides otherwise. *All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.*

On appeal, Ms. Gutierrez maintains that since she never challenged Mr. Bruno's status as the domiciliary parent and did not file a pleading in the trial court challenging Mr. Bruno's decision regarding the choice of school for the children pursuant to La. R.S. 9:335(B)(3), Mr. Bruno's motion was improper and the trial court erred in considering same. We find no merit to her contention.

Here, the issue of the choice of school for the children was before the trial court on Mr. Bruno's motion. Although Mr. Bruno was the domiciliary parent and Ms. Gutierrez did not bring a motion pursuant to La. R.S. 9:335(B)(3), we cannot say that a motion pursuant to La. R.S. 9:335(B)(3) is the *only* procedure by which the trial court can address decisions made by the domiciliary parent. Indeed, La. R.S. 9:335(B)(3) does not specifically provide that *only* the non-domiciliary parent can bring a motion before the trial court regarding a decision made by the domiciliary parent. Rather, La. R.S. 9:335(B)(3) merely provides the authority by which the non-domiciliary parent can seek judicial review of decisions made by the domiciliary parent. As previously noted, in any child custody case, the paramount consideration is the best interest of the child and every child custody case must be decided in light of its particular facts and circumstances, including the nature of the relationship of the parties, in order to reach a decision that is in the best interest of the child. The record demonstrates that Ms. Gutierrez did not

agree with Mr. Bruno's decision regarding the children's attendance at one school—McGehee—for the 2019-2020 school year and that her intent was to continue to bring the children to St. Gregory during her custodial week for the 2019-2020 school year. Given the acrimonious nature of the parties' relationship demonstrated by the record before us, and given the trial court's knowledge of that relationship and its knowledge of the particular facts and circumstances of this case, the trial court apparently concluded that it was in the best interest of the children to address the issue. We cannot say that the trial court abused its discretion in considering Mr. Bruno's motion or in its decision to uphold and enforce Mr. Bruno's decision.

As to the modification of custody in order to accommodate Mr. Bruno's decision, we note that the July 17, 2018 custody decree was a considered decree, as it was rendered following a ten-day trial wherein the trial court received evidence of the parties' ability to exercise care for their minor children.[5] Once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely caused by a change of environment is substantially outweighed by its advantages to the child. **Bergeron**, 492 So.2d at 1200; see also **Mulkey v. Mulkey**, 2012-2709 (La. 5/7/13), 118 So.3d 357, 364-365.

---

[5] A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. **Major**, 849 So.2d at 551. By contrast, a non-considered decree or uncontested decree is one in which no evidence is presented as to the fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. **Major**, 849 So.2d at 552. There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and of that needed to change a custody plan ordered pursuant to a non-considered decree. **Evans**, 708 So.2d at 738.

In **Bergeron**, the Louisiana Supreme Court recognized that there was a narrow class of cases where a modification of custody may be in a child's best interest, even though the moving party may not be able to show that the present custody arrangement was "deleterious" to the child. See **Mulkey**, 118 So.3d at 365. Therefore, in order to ensure that a heavy burden of proof did not inflexibly prevent a modification of custody that was in a child's best interest, while still protecting children from the detrimental effects of standards that were too liberal for changes in custody, the supreme court in **Bergeron** enunciated an alternative standard for the modification of a considered custody decree, *i.e.*, that the party seeking the change prove, by clear and convincing evidence, that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. See **Bergeron**, 492 So.2d at 1199–1200; **Mulkey**, 118 So.3d at 365. Thus, the supreme court's decision in "**Bergeron** was not meant to tie the hands of a court when the facts and circumstances of a case and the needs of a child necessitate a change in custody." **Mulkey**, 118 So.3d at 367.

Therefore, in order to modify the July 17, 2018 judgment, Mr. Bruno had to prove, and the trial court had to find: (1) that a material change in circumstances had occurred since the rendition of the July 17, 2018 custody decree and (2) that the burden of proof set forth in **Bergeron** had been met, *i.e.*, that the continuation of the present custody plan was so deleterious to the children so as to justify a modification of the custody decree *or* that the harm likely to be caused by a change of environment was substantially outweighed by its advantages to the children. See **Mulkey**, 118 So.3d at 365. On appeal, Ms. Gutierrez argues that Mr. Bruno failed to prove that there had been a material change in circumstances since the rendition of the July 18, 2018 custody decree, that the burden of proof set forth in **Bergeron** had been met, and that a modification of physical custody was in the best interest of the child. We disagree.

9

According to the record, at the time the July 17, 2018 judgment was signed, the children had not begun their week-on, week-off alternating schedule between McGehee and St. Gregory. Mr. Bruno testified that as the 2018-2019 school year progressed, he and the children's teachers at McGehee recognized that the children were falling behind due to the alternating school schedule, as they were missing critical parts of the lessons and not developing the social relationships that would be reinforced by daily interaction with their peers. In addition, Mr. Bruno testified that testing by the NOSH in November 2018 (after the July 17, 2018 custody judgment), uncovered severe speech and language deficiencies with both children and that the children were in need of speech therapy. Mr. Bruno believed that the children were being disadvantaged educationally, socially, and developmentally by attending two different schools and that this would increase if the current situation continued. Mr. Bruno explained that after consideration of these issues and attempting to discuss the matter with Ms. Gutierrez, he believed it would be in the children's best interest if they were enrolled in one school—McGehee—for the 2019-2020 school year. Mr. Bruno also explained that Ms. Gutierrez refused to discuss the matter with him and maintained that the children would attend school in Houma during her custodial week. Therefore, he decided to commence the instant motion seeking to enforce and uphold his decision.

At the hearing, Mr. Bruno offered the testimony of Dr. Emonet, who conducted observations of the children at both schools, met with teachers at both schools, and reviewed assessments of the children. Dr. Emonet concluded that the children would benefit from attending school five days a week, full-time at one school, because of the importance of a consistent learning environment. She further opined that the curriculum offered at McGehee was best suited to meet the needs of the children, particularly since they would also be able to participate in

the necessary speech therapy at McGehee. Dr. Emonet also stressed the importance of the need for one therapist, and the need to address their delays now.

Ms. Gutierrez offered no evidence contradicting the testimony of either Mr. Bruno or Dr. Emonet. Instead, she simply maintained that the children did not need to attend school at their age and that the parties should wait until the children turned five years old, since that is the state's age requirement for attendance at school. Ms. Gutierrez also testified that she and the children would suffer if she did not have custody of the children during the school year and that the children should not be deprived of time with their mother.

After a thorough review of the record, we find the trial court's apparent factual finding that there had been a material change in circumstances since the rendition of the July 17, 2018 custody decree was reasonably supported by the record and was not clearly wrong. We also find that the record does not contain evidence of any harm to the children that would not be outweighed by the advantage of a change in physical custody allocation during the school year in favor of Mr. Bruno, and likewise with the change in physical custody in favor of Ms. Gutierrez during the summer.

Although the trial court did not specifically articulate any reasons for judgment, after hearing all of the evidence and having the benefit of seeing the parties and hearing their testimony, the trial court determined that the best interest of the children would be served by a modification of custody. Thus, the trial court implicitly concluded that there were substantial advantages to the children with a change in custody, including but not limited to the minor children being in a consistent school environment for the 2019-2020 school year, as well as a consistent speech therapy program. Ms. Gutierrez has not demonstrated that this factual finding is clearly wrong.

11

Therefore, considering the particular facts and circumstances of this case, we find no error in the trial court's determination that Mr. Bruno met his burden of demonstrating that his decision that the children attend only one school for the 2019-2020 school year was in the best interest of the children, that there was a material change in circumstances warranting a modification of custody to accommodate that decision, and that Mr. Bruno met the burden of **Bergeron** by proving that any harm caused by a modification of the July 17, 2018 custody decree would be substantially outweighed by the advantages to the children in attending one school.

Accordingly, having found no manifest error in the trial court's factual findings, we do not find that the trial court abused its vast discretion in granting Mr. Bruno's motion and in modifying the parties' physical custodial arrangement.

## CONCLUSION

For all of the above and foregoing reasons, the August 8, 2019 judgment of the trial court and the August 8, 2019 joint custody implementation plan rendered in furtherance of the August 8, 2019 judgment are affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Alejandra Carolina Gutierrez.

**AFFIRMED.**